IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

Marcia Denmon,

Plaintiff,

v.   Case No. 4:21-00457-HFS

Kansas Counselors, Inc.,

Defendant.

**ORDER**

This is an action brought under the Fair Debt Collection Practices Act. Marcia Denmon brought suit against Defendant Kansas Counselors, Inc., alleging violation of the Fair Debt Collection Act, 15 U.S.C. § 1692, et seq. (Doc. 13-1). Presently pending are cross motions for summary judgment. (Docs. 20, 22). Kansas Counselors has filed a motion for summary judgment arguing that plaintiff's claim fails because there is no injury and therefore no Article III standing. (Doc. 22). Denmon has also filed a motion for summary judgment arguing that the stipulated facts show that Kansas Counselors violated the Fair Debt Collection Practices Act and judgment in her favor should be entered. (Doc. 20).

The parties have filed a stipulated statement of facts. (Doc. 22-1) In November of 2016, Denmon incurred a medical debt to Rockhill Orthopedic Specialists.[1] The bill was turned over to Kansas Counselors for collection. On June 28, 2017, Kansas Counselors

---

[1] Both parties agree that the debt qualifies as a consumer debt pursuant to 15 U.S.C. §1692a5.

1

sent an initial debt collection letter to Denmon. On March 30, 2021, Denmon responded by letter to Kansas Counselors stating:

> I reviewed my credit report and discovered that you are reporting that I owe you $300 for a debt to Rockhill Orthopedic Specialists, Inc. I dispute this debt. Please do not contact me about this debt.(Doc. 22-1 Ex. A).

Shortly thereafter, on May 19, 2021, Kansas Counselors responded by letter stating:

> We recently received your request for verification of your account with our office.
>
> In response to your request, we are enclosing documents provided by our client which verify your debt.
>
> Now that our debt has been verified, we will resume collection activity on your account. We are always interested in assisting you in your efforts to resolve this matter.
>
> Sincerely,
> Kansas Counselors
>
> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.
> (Doc. 22-1 Ex. B).

Shortly after receiving the May 19, 2021, letter Denmon filed suit against Kansas Counselors alleging that the letter violated section 1692c( c) of the Fair Debt Collection Practices Act. (Doc. 1). Denmon filed an amended complaint on September 27, 2021. (Doc. 13). Section 1692c( c) requires that a debt collector cease communications if the consumer notifies the debt collector in writing that the consumer refuses to pay the debt, among other things. Id. Plaintiff's allegation of injury is that the May 19, 2021, letter violated her "right to be left alone and her right to privacy" and caused her to be distressed and alarmed. (Doc. 13-1 ¶¶9,10).

Both parties have now filed motions for summary judgment. (Docs. 20, 22). There are two dispositive issues. First, whether Denmon has alleged actual injury sufficient to

2

Case 4:21-cv-00457-HFS   Document 32   Filed 03/10/23   Page 2 of 10

establish Article III standing. (Doc. 22).   Second,  whether the May 19, 2021, letter violated the Fair Debt Collection Practices Act. (Doc. 20).

**Summary Judgment Standard.**

Pursuant to Fed. R. Civ. P. 56(a), courts must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a).

1. **Article III Standing. (Doc. 22).**

Kansas Counselors contends that summary judgment must be entered in its favor because plaintiff Denmon lacks Article III standing. Plaintiff argues that plaintiff has no tangible injury, and therefore, cannot meet her burden of establishing standing.  (Doc. 22, p. 5).

The Supreme Court has clarified the requisite injury required for Article III standing in two recent cases.  TransUnion LLC v. Ramirez,  141 S.Ct. 2190 (2021),  and Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The Eighth Circuit has recently summarized the Supreme Court pronouncements as to standing in Ojogwu v. Rodenburg Law Firm, 26 F.4th 457 (8th Cir. 2022).

Article III standing consists of three elements: (1) plaintiff must have suffered an injury in fact that is concrete, particularized,  and actual or imminent;  (2) that injury must be fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision. Ojogwu, 26 F.4th at 461 (citing TransUnion, 141 S.Ct. at 2203).  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Spokeo, 578 U.S. at 338.

The "[f]irst and foremost" of the elements of standing is injury in fact, which requires the plaintiff to show that the harm is both "concrete and particularized." Ojogwu, 26 F.4th at 461 (citing Spokeo, 578 U.S. at 338-39). To establish injury in fact, the allegations must be sufficient to show a plaintiff has suffered a concrete harm. *Id.* at 339–40. Tangible harms,

3

such as physical harm and monetary harm, "readily qualify as concrete injuries under Article III." TransUnion, 141 S. Ct. at 2204. Although less readily identifiable, intangible harms, too, can be concrete. See Spokeo, 578 U.S. at 340. Intangible harms are concrete when the asserted harm has a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 141 S. Ct. at 2204.

Plaintiff responds that she has alleged a sufficient actual injury because the letter sent by defendant "intruded upon her seclusion and invaded her privacy." (Doc. 21 at 8.) More specifically, plaintiff describes her injury resulting from the May 19, 2021, letter as an "invasion of Ms. Denmon's legally-protected right to be left alone and her right to privacy," which caused her to question whether she could refuse to pay the debt, and "distress[] and alarm[]." (Doc. 13-1 ¶¶ 9-10; see Doc. 22-1 and Doc. 21 at 4.)This, she asserts, was a concrete and particularized harm that is closely related to the tort of invasion of privacy and intrusion upon seclusion, and therefore, she has satisfied the injury requirement of standing. (Doc. 21 at 8-9.)

For support, plaintiff relies on a Tenth Circuit case, Lupia v. Medicredit, Inc., 8 F.4th 1184 (10th Cir. 2021). In Lupia, plaintiff alleged that the defendant violated 15 U.S.C. § 1692c(c) by placing one telephone call to her after receiving a cease-and-desist letter. Id. at 1189. The court found that the intangible harm alleged (e.g., telephoning plaintiff after it received her cease-and-desist letter) has a close relationship to the tort of intrusion upon seclusion. Id.at 1192. Although the court recognized that the intrusion must be made "with such persistence and frequency to amount to a course of hounding plaintiff" and that the conduct in that case was one missed telephone call and a voicemail, the court nevertheless concluded that plaintiff alleged an injury bearing a "close relationship" to the tort of intrusion upon seclusion and satisfied the standing requirement. Id. at 1191-92. In reaching this conclusion, the Tenth Circuit noted that the Supreme Court in TransUnion, stated that "American courts have traditionally recognized disclosure of private information and

intrusion upon seclusion as intangible harms that are an appropriate basis for a lawsuit." Id. at 1192 (citing TransUnion, 141 S. Ct. at 2204).

Plaintiff also relies on the Seventh Circuit's decision in Gadelhak v. AT & T Servs. Inc., 950 F.3d 458 (7th Cir. 2020). That case considered an alleged violation of the Telephone Consumer Protection Act and whether there is a sufficient injury based on unwanted automated text messages. The Seventh Circuit, agreeing with the Second and Ninth Circuit, concluded that "[a] few unwanted text messages may be too minor an annoyance to be actionable at common law, but such texts nevertheless pose the same kind of harm that common law courts recognize – a concrete harm that Congress has chosen to make legally cognizable." Id.

Kansas Counselors responds that Lupia was wrongly decided, and the Eighth Circuit's decision is Ojogwu v. Rodenburg Law Firm, 26 F.4th 457, 464 (8th Cir. 2022) controls. In Ojogwu, a consumer debtor brought an action against a debt collector for violations of the FDCPA arising from receipt of a copy of garnishment summons that was served on a garnishee bank in violation of 1692c(a)(2). The Eighth Circuit considered the alleged intangible injuries, such as negative emotions, concluding that these injuries were insufficient to establish a concrete injury where the receipt of a communication did not cause plaintiff to act to his detriment or fail to protect his interests. Id. at 462-63. Furthermore, the court found that alleged intangible injuries as a result of receiving one mailing "falls short of cognizable injury as a matter of general tort law." Id.

Kansas Counselors emphasizes that one letter is not an invasion of privacy, citing, Ward v. Nat'l Patient Account Servs. Sols., 9 F.4th 357 (6th Cir. 2021) (Doc. 22 at p. 7). In Ward, the plaintiff alleged that a collector's voice mails to the consumer plaintiff violated §1692e(11) and §1692e(14) of the FDCPA, which require that a debt collector identify itself as a debt collector in a voice mail, and that a debt collector use its "true name" in collection communications. In addressing Article III standing for the first time on appeal, the consumer

5

plaintiff argued that the collector's failure to identify itself by its true name and its failure to identify itself as a debt collector violated the consumer plaintiff's privacy. The Sixth Circuit found that these allegations do "not closely resemble intrusion upon seclusion, which generally requires a plaintiff to demonstrate that a defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of another or his privacy affairs or concerns." Ward, 9 F.4th at 362, citing, Restatement (Second) of Torts, § 652B (1977)). Kansas Counselors argues that the same considerations apply, and plaintiff's alleged injury based on one unwanted letter is insufficient to support a claim of actual injury.

However, there are two important distinctions from this case and those cited by defendant. First, both Ojagwu and Ward considered different provisions of the FDCPA. The Eighth Circuit specifically noted that plaintiff did not assert a violation of section 1692c( c). Ojagwu, 4 F.4th at 464. As the Sixth Circuit recognized, a failure to disclose the debtor collector's identity is not closely related to invasion of privacy. Ward, 9 F.4th at 362. Indeed, the Eighth Circuit specifically recognized this difference in footnote 4 of Ojagwu:

> Most circuits to consider the issue have concluded that a consumer debtor has Article III standing to assert an FDCPA claim that a debt collector's harassing calls or letters invaded a privacy interest protected by the well-established tort of "intrusion upon seclusion." See Restatement (Second) of Torts § 652B; Lupia v. Medicredit, Inc., 8 F.4th 1184, 1191 (10th Cir. 2021); Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 461-63 (7th Cir. 2020) (Barrett, J.), cert. denied, 141 S. Ct. 2552 (2021). We agree that many alleged § 1692c(a)(2) violations will satisfy the Article III requirement of concrete injury in fact; after all, the FDCPA's purpose was "to eliminate abusive debt collection practices." § 1692(e). But the concrete harm inquiry is fact specific. Directly providing a debtor with a required notice that the creditor is seeking an ancillary remedy in a long-standing debt collection action is not an invasion of the defendant's privacy.

The Northern District of Texas recently considered the argument defendant makes here in Vazzano v. Receivable Management Services, 2022 WL 17406317 (N.D. Tex. Dec. 2), concluding that a consumer had standing to bring a claim under 1692c of the FDCPA based on her intrusion upon seclusion theory of factual injury. Id. at *3.[2] This decision was

---

[2] Pennell v. Global Trust Management LLC, 990 F.3d 1041 (7th Cir. 2021) considered whether stress and confusion constituted actual injury.

issued after a district court's conclusion in favor of standing in Vazzano v. Receivable Management Services, LLC, 2022 WL 3349149 (N.D. Tex. Aug. 12) following the Fifth Circuit's decision in Perez v. McCreary, Veselka, Bragg & Allen, P.C. 45 F.4th 816 (5th Cir. 2022) (rejecting injury based on intrusion upon seclusion for a violation under 1692e). The court noted that 1692c(c) regulates types of communications that have a "close relationship" to the harm posed by an invasion of privacy and thus, even a single unwanted message amounted to an actual injury. 2022 WL 17406317, at * 3 (1692c contains language indicating Congress' intent to elevate a single unwanted message to the status of a legally cognizable injury). Other courts have reached the same conclusion. See, e.g., Carter v. Capital Link Mgmt., 2022 WL 2705250, at n.9 (N.D. Ala. 2022)(addressing Article III standing regarding a consumer's claims that an attempt to collect a discharged debt by sending her a text message violated §1692c and §1692e of the FDCPA); Cross v. State Farm Mut. Auto. Ins. Co., 2022 WL 193016, at *7 (W.D. Ark. 2022)(addressing Article III standing for privacy harms caused by unwanted text messages, sent in violation of the Telephone Consumers Protection Act); Chapman v. Nat'l Health Plans & Benefits Agency, 2022 WL 3130225, at * (E.D. Mich. 2022)(same holding as to Article III standing). See also Persinger v. Southwest Credit Sys. LP, 20 F.4th 1184 (7th Cir. 2021) (standing based on invasion of privacy and Fair Credit Reporting Act).

Kansas Counselors states that the footnote in Ojagwu is discussing "harassing calls or letters" and that one letter cannot meet this level of injury. Defendant states: "there is no way to reasonably characterize the content or volume of this lone letter as harassing." (Doc. 30, p. 5). This argument, however, fails to acknowledge cases to the contrary and that this Court views the evidence in the light most favorable to plaintiff. Plaintiff's citations to Klein v. Credico Inc., 922 F.3d 393, 397 (8th Cir. 2019) and Ortiz v. Enhanced Recovery Co., LLC, 2019 WL 2410081, at *3 (N.D. Tex.) is not to the contrary as those decisions were considering violations of the FDCPA, not standing. Similarly, the Eighth Circuit's

recent decision in Schumacher v. SC Data Center, Inc., 33 F.4th 504 (8th Cir. 2022) addresses standing with respect to alleged violations of the Fair Credit Reporting Act, not the Federal Debt Collection Practices Act.

Accordingly, plaintiff has met her burden of alleging a sufficient injury to establish Article III standing. Defendant's motion to dismiss for lack of standing is hereby DENIED. (Doc. 22).

**2. Violation of Section 1692c( c). (Doc. 20).**

Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay, see, 15 U.S.C. § 1692c(c). Plaintiff claims a violation of the section based on the May 19 letter, sent after she asked by letter of March 30 to cease communications, and that she is entitled to summary judgment on this claim.

Section 1692c(c) of the FDCPA contains three exceptions to the prohibition on continued communications after a client demands that collection communications cease. A collector may continue to contact a consumer: 1) to advise that the debt collector's further efforts are being terminated; 2) to notify that the debt collector may invoke specified remedies which are ordinarily invoked by such debt collector; or 3) where applicable, to notify the consumer that the debt collector intends to invoke a specified remedy. See 15 U.S.C. §1692c(c)(1-3). Defendant argues that the May 19 letter qualifies as permissible under these exceptions.

1. **May 19 Letter - Notice of Intent to Seek Specific Remedy.**

Kansas Counselors first argues that summary judgment in Denmon's favor is not warranted because the May 19 letter was to notify her that it intended to invoke a specific

remedy – collection and therefore the letter qualifies as an exception to the prohibited contact.  See 15 U.S.C. §1692c( c)(2)and (3).

Plaintiff responds that  collection activity is not a specified remedy and cites Schultz v. Southwest Credit Systems, LP, 2017 WL 11457912 at *8-10 (N.D. Iowa) as support.  In that case, the court found a similar letter did not qualify under that exception.

Defendant attempts to differentiate Shultz because the subsequent letter in that case also stated:   "Please remit the balance in full to our office upon receipt of this letter." Id. at 5.  Here, the May 19 letter did not specifically ask to remit payment. However, the letter did  contain the amount due, ask that Denmon contact a representative to establish payment arrangements, informed  Denmon that it would resume collection activity, and that the letter was "from a debt collector and is an attempt to collect a debt." (Doc. 13-1, Ex. B). The letter is like that found violative in Shultz, 2017 WL 11457912 at n. 3.  See also Vazzano, 2022 WL 3349149, at *22.

**2.  Does the May 19 letter qualify as a Validation Letter.**

Kansas Counselors suggests that that 1692(g)(b) required it to send the May 19, 2021, validation letter to resume collection activities, and to hold otherwise would force defendant into a frozen state where it could not seek to collect the debt because compliance with section 1692g(b) would violate 1692c( c).  Marino v. Hoganwillig, PLLC, 910 F. Supp. 2d 492, 496 (W.D.N.Y. 2012).

Section 1692g(a)(4) of the FDCPA requires a debt collector to provide a verification of a debt to a consumer, only if the consumer disputes the debt, in writing, within 30 days of receipt of the debt collector's initial notice of the debt, see, 15 U.S.C. § 1692g(a)(4). Defendant KCI sent its initial collection letter to Ms. Denmon on June 28, 2017. (Doc. 13-1 ¶ 6). Any obligation KCI had under the FDCPA to provide Denmon with verification of the debt ended nearly four years ago. The May 19 response letter does not qualify as an exception pursuant to section 1692c( c)(2). Denmon did not request verification of the debt,

9

she demanded that collection communications cease.[3] (Doc. 13-1, Ex. A at ¶ 7). Recker v. Cent. Collection Bureau, 2005 WL 2654222 (S.D. Ind.) is based on different facts, as the debt collector filed suit and provided verification within the 30-day validation period.

For the reasons stated above, it is hereby

ORDERED that defendant's motion to dismiss based on lack of standing is DENIED. (Doc. 22). It is further

ORDERED that plaintiff's motion for summary judgment is GRANTED. (Doc. 20).

SO ORDERED.

                                                                         */s/ Howard F. Sachs*
                                                                        HOWARD F. SACHS
                                                                        UNITED STATES DISTRICT JUDGE

March 10, 2023
Kansas City, Missouri

---

[3] Denmon also argues in its reply brief that it's letter does not violate 1692c(c) because plaintiff waived her section 1692c(c) protections in her March 30, 2021, letter because she disputed the debt. The cases she cites, however, involve different response letters. Duarte v. Midland Funding LLC, 2019 WL 978495, at *4 (N.D. Ill.) (providing information as to debt but also acknowledging that debt collector would no longer contact) and Scheffler v. Gurstel Chargo, PA, 902 F.3d 757 763 (8th Cir. 2018) (garnishment letter). Even if the March 30 letter could be construed as a waiver authorizing defendant to send verification of the debt, the response went beyond the stated purported waiver. See Vazzono, 2022 WL 3349149, at *24.